**AFFIDAVIT OF SPECIAL AGENT MARK RICHARD STANLEY
IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Mark Richard Stanley, being duly sworn, depose and state:

I. INTRODUCTION

1.  I am employed as a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed since 1991. Currently, I am assigned to the Financial Institution Fraud Squad at the Washington Field Office, Northern Virginia Resident Agency, Falls Church, Virginia. My duties with the FBI include, but are not limited to, the investigation of alleged violations of Federal criminal statutes which involve financial institutions, the investigation of complex financial crimes, including extensive document review, analysis and witness interviews, and the preparation, presentation and service of criminal complaints, arrest and search warrants pursuant to investigations of financial crimes.

2.  This Affidavit is in support of an application for a criminal complaint and arrest warrants for violations of:

    a.   Conspiracy (18 USC § 371)

    b.   Bank Fraud (18 USC § 1344)

    c.   Wire Fraud (18 USC § 1343)

    d.   Money Laundering (18 USC § 1957)

3.  The facts set forth in this affidavit are based upon my personal knowledge, knowledge obtained during my participation in this investigation, knowledge obtained from other law enforcement personnel, review of documents related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through training and experience.

4. By virtue of my training and experience as a Special Agent, I am familiar with investigations involving individuals who have devised or intended to devise schemes and/or artifices to defraud, or obtain money or property by means of false or fraudulent pretenses, representations, or promises.

II. <u>PROBABLE CAUSE</u>

**CONSPIRACY**

<u>Riggs Bank</u>

5. Riggs Bank N.A. ("Riggs Bank" or "Riggs") was a financial institution organized, licensed and doing business under the laws of the United States with a principal place of business in Washington, D.C. Riggs Bank was a financial institution whose deposits were insured by the Federal Deposit Insurance Corporation.

6. Riggs Bank operated a business division within the bank known as International Banking. Customers of International Banking were principally foreign embassies, foreign governments, and high net worth foreign governments officials and their families.

<u>The Parties</u>

7. Defendant SIMON P. KARERI ("KARERI") was a Senior Vice President in Riggs Bank's International Banking division in Washington, D.C. KARERI's work focused on countries in the African Caribbean regions. SIMON P. KARERI is a black male, DOB 7/15/57, 5'7", 170 pounds. As part of his job duties, KARERI managed Riggs Bank's business relationships with certain Riggs foreign governments and foreign customers from certain African countries. In his capacity as Senior Vice President, defendant KARERI had broad authority over the bank accounts he managed on behalf of Riggs including, but not limited to, the power to

approve wire transfers of funds from customer accounts. As a senior officer of Riggs Bank, KARERI occupied a fiduciary position of trust, confidence and obligation at Riggs, and in performing his duties for Riggs, KARERI owed Riggs the fiduciary duties of fidelity, honesty, loyalty, and care.

8. Defendant NDEYE NENE FALL KARERI ("FALL") was Simon P. Kareri's wife and resided with KARERI at a residence in Silver Spring, Maryland. NDEYE NENE FALL KARERI is a black female, DOB 9/13/64, 5'5", 120 pounds.

Riggs Bank's Code of Ethics and Prevailing Banking Industry Regulations

9. Riggs Bank prohibited conflicts of interest and self-dealing by bank employees. Specifically, the Riggs Bank Code of Ethics:

- expressly directed bank personnel to "avoid representing the Bank in any transaction, whether with a person or business organization in which a staff member or any member of his or her immediate family has a material connection or a substantial financial interest";

- strictly prohibited bank employees from borrowing money from bank customers;

- stated that "Staff members and their immediate families are not to solicit or accept any personal benefits from any customer of the Bank . . . .";

- "No staff member shall engage in any transaction with the understanding that all or part of the anticipated payment is to be used for any unlawful or improper purpose. No secret or non-recorded fund may be established or maintained for any purpose."

10. Riggs Bank required all of its employees, including defendant KARERI, to certify annually in writing that they had read the Riggs Code of Ethics and were in compliance with it.

11. Riggs Bank was periodically examined by federal bank examiners to assure that it was operated in a safe and sound manner and in conformity with applicable laws and regulations. The Office of the Comptroller of the Currency ("OCC") had primary supervisory authority over Riggs Bank and defendant KARERI in his capacity as senior vice president of Riggs Bank.

12. Title 12, United States Code, section1818(e)(1), among other things, expressly prohibits bank officers such as defendant KARERI from receiving any financial gain as a result of engaging in conduct which violates the bank officer's fiduciary duty of loyalty to the bank.

13. Upon discovering misconduct by bank officers, the OCC has, under Title 12 of the United States Code, extensive administrative enforcement authority over banks and bank officers, including the imposition of civil monetary penalties of up to $1,000,000 per day, removals and prohibitions from banking, and restitution actions.

<u>Equatorial Guinea and Benin accounts at Riggs Bank</u>

14. Equatorial Guinea ("EG") is a country approximately the size of Maryland on the west coast of Africa. In 1995, billions of dollars of oil reserves were discovered within EG territorial waters, resulting in a significant influx of capital from businesses in the United States and elsewhere.

15. From in or about 1996 to in or about 2004, defendant KARERI, in his capacity as Senior Vice President of Riggs, opened and maintained numerous bank accounts for the government of EG. KARERI also opened and maintained bank accounts for various EG senior

government officials, and their family members including the EG President, Teodoro Obiang Nguema Mbsago ("Obiang") and Obiang's son, Teodoro Nguema Obiang ("Nguema").

16. Benin is a country approximately the size of Maine on the west coast of Africa. Defendant KARERI, in his capacity as Senior Vice President of Riggs, opened and maintained a bank account for the embassy of Benin. KARERI was in charge of Riggs Bank's business relationship with Benin.

17. H.S., a resident of Virginia, had experience as a construction contractor and, from time to time, performed construction services for the Embassy of Benin and other embassies and embassy officials.

### Jadini Holdings

18. On or about May 9, 2001, defendant SIMON P. KARERI established an offshore shell corporation in the Bahamas known as Jadini Holdings Ltd. ("Jadini") for the purpose of concealing his personal business transactions with Riggs customers. The business address for Jadini listed in the incorporation documents was defendants SIMON P. KARERI and NDEYE NENE FALL KARERI's home address in Silver Spring, Maryland.

19. On or about July 3, 2001, defendant NDEYE NENE FALL KARERI opened bank account numbers xxxxxx5279 and xxxxxx5260 at SunTrust Bank in the name of Jadini Holdings Ltd. ("the Jadini accounts"). FALL was listed as President of Jadini Holdings Ltd.

### THE CONSPIRACY

20. From between in or about January, 2000, until in or about May, 2004, in the District of Columbia and elsewhere, defendants SIMON P. KARERI and NDEYE NENE FALL

KARERI did knowingly combine, conspire and agree with each other and with others to commit the following offenses against the United States:

    a. to defraud Riggs Bank by devising a scheme and artifice to defraud, and to obtain moneys and funds owned by and under the custody and control of Riggs, a federally insured financial institution, by means of false and fraudulent pretenses, representations, and promises, that is, defendants SIMON P. KARERI and NDEYE NENE FALL KARERI wilfully concealed the material fact from Riggs Bank that KARERI was engaging in prohibited personal business transactions with Riggs Bank customers, in violation of Title 18, United States Code, Section 1344 (bank fraud);

    b. to knowingly devise a scheme and artifice to defraud and to deprive Riggs Bank of defendant SIMON P. KARERI's honest services as a Riggs Bank officer and employee and to obtain money by means of false and fraudulent pretenses and representations, and for the purpose of executing such scheme use interstate wire communications in violation of Title 18, United States Code, Section 1343 (wire fraud).

A Goal of the Conspiracy

21.    A goal of the conspiracy was for defendants SIMON P. KARERI and NDEYE NENE FALL KARERI to unlawfully enrich themselves by SIMON P. KARERI engaging in prohibited personal business transactions with Riggs Bank customers in which KARERI had a financial interest without the knowledge or consent of Riggs Bank.

Manner and Means of the Conspiracy

22.    In order to achieve a goal of the conspiracy, defendants SIMON P. KARERI and NDEYE NENE FALL KARERI used the following manners and means, among others:

a. The Embassy of Benin and other embassies maintained bank accounts at Riggs Bank that defendant KARERI supervised. Pursuant to defendant KARERI's recommendation, and without Riggs Bank's knowledge or consent, the Embassy of Benin and other embassies entered into business relationships with H.S. to perform remodeling services on their properties.

b. In or about January, 2000, Defendant KARERI instructed H.S. to provide defendant KARERI with an initial estimate for the work on the Benin Embassy. In or about February, 2000, H.S. provided defendant KARERI with an initial estimate of approximately $186,000 for a major renovation of the Benin Embassy in Washington, D.C.

c. In or about February, 2000, KARERI instructed H.S. to inflate the final estimate H.S. submitted to Benin to $410,000, of which KARERI demanded that H.S. return $224,000 to KARERI.

d. The Benin Embassy issued checks from their Riggs Bank accounts made payable to H.S. for the full inflated price – accounts defendant KARERI managed on behalf of Riggs.

e. H.S. delivered the portion of the proceeds that defendant KARERI demanded to KARERI at KARERI's office at Riggs Bank in Washington, D.C. As defendant KARERI well knew, his participation in these transactions was a direct violation of KARERI's fiduciary duty of loyalty to Riggs Bank and exposed Riggs to risk of loss and harm.

f. On or about May 9, 2001, defendants KARERI and FALL established Jadini through Trident Trust Services in Atlanta, Georgia. Defendant KARERI registered Jadini in the Bahamas. Defendant FALL was listed as President of Jadini in order to conceal defendant KARERI's financial interest in Jadini.

g. On or about July 3, 2001, FALL opened two bank accounts at SunTrust Bank in the name of Jadini Holdings, Ltd.

h. Between in or about July, 2001, and in or about March, 2002, from his office at Riggs Bank in Washington, D.C., defendant KARERI caused the transfer of approximately $1,096,677.60 of monies from Riggs Bank accounts owned and controlled by the government of Equatorial Guinea to SunTrust Bank Jadini accounts owned by defendants KARERI and FALL.

i. Defendants KARERI and FALL established and used Jadini to wilfully conceal from Riggs Bank defendant KARERI's prohibited business activities with Riggs customers over whose accounts KARERI had supervision. As defendant KARERI well knew, his participation in these transactions was a direct violation of KARERI's fiduciary duty of loyalty to Riggs Bank and exposed Riggs to risk of loss and harm.

j. Defendant KARERI enlisted the assistance of third persons to conceal monies that KARERI obtained from Riggs customer accounts that were under his supervision. For example, on or about November 28, 2003, defendant KARERI gave B.B. a check made payable to B.B. in the amount of $140,000 drawn off the Riggs account of Nguema, the son of the President of EG. Defendant KARERI supervised this account in his capacity as Senior Vice President of Riggs.

k. On or about November 30, 2003, B.B., acting at defendant KARERI's direction, deposited Riggs check #301 into B.B.'s bank account and wrote a check made payable to defendant FALL in the amount of $139,000.

l. On or about December 8, 2003, defendant FALL deposited this $139,000 into her bank account at Chevy Chase Bank.

m. Defendants KARERI and FALL solicited B.B.'s involvement and used FALL's maiden name and bank account to wilfully conceal from Riggs Bank defendant KARERI's prohibited business activities with Riggs customers over whose accounts KARERI had supervision.

n. In an effort to conceal defendant KARERI's prohibited activities from Riggs Bank and banking regulators, defendant KARERI made false statements to Riggs Bank.

o. In an effort to conceal defendant KARERI's activities from Riggs Bank and the Internal Revenue Service, defendants KARERI and FALL failed to report any of these proceeds as income on their federal tax returns.

p. As defendant KARERI well knew, KARERI's receipt of funds from Riggs Bank customer accounts without Riggs's knowledge or consent was a direct violation of KARERI's fiduciary duty of loyalty to Riggs Bank and exposed Riggs to potential regulatory sanctions and other risk of loss and harm.

## Overt Acts

23. Within the District of Columbia and elsewhere, in furtherance of the above-described conspiracy and in order to carry out the objects thereof, defendants SIMON P. KARERI and NDEYE NENE FALL KARERI and others known and unknown to the Grand Jury, committed the following overt acts, among others:

(1) On or about April 8, 2000, defendant KARERI received Crestar Bank check number 1512 from H.S. in the amount of $110,000.

(2) On or about May 22, 2000, defendant KARERI received Crestar Bank check number 1564 from H.S. in the amount of $55,000.

(3)  On or about September 6, 2000, defendant KARERI received Crestar Bank check number 1633 from H.S. in the amount of $49,000.

(4)  On or about September 6, 2000, defendant KARERI received Crestar Bank check number 1634 from H.S. in the amount of $10,000.

(5)  On or about July 5, 2001, defendant KARERI caused the wire transfer of $700,000 from Riggs account # xxxx642 held by the government of EG to FALL's Jadini account.

(6)  On or about July 5, 2001, defendant KARERI caused the wire transfer of $329,926 from Riggs account # xxxx4642 held by the government of EG to FALL's Jadini account.

(7)  On or about July 22, 2002, defendant FALL purchased an $800,000 certificate of deposit at SunTrust Bank (account # xxxxxx9776) using proceeds from FALL's Jadini account #xxxxx5279.

(8)  On or about March 20, 2002, defendant KARERI caused the wire transfer of $66,751.68 from Riggs account # xxxxx4642 held by the government of EG to KARERI's Jadini account #xxxxx5279.

(9)  On or about November 28, 2003, defendants SIMON P. KARERI and NDEYE NENE FALL KARERI delivered to B.B. Riggs Bank check # 301 drawn from Teodoro Nguema Obiang's Riggs Bank account # xxxxx-450 in the amount of $140,000 and made payable to B.B..

(10)  On or about November 28, 2003, B.B. deposited Riggs Bank check # 301 into Bank of America bank account # xxxxxx1995, an account held by B.B..

(11)  On or about November 30, 2003, B.B. issued check # 756 from Bank of America account # xxxxx1995 in the amount of $139,000 made payable to defendant NENE FALL.

(12) On or about December 8, 2003, defendant FALL deposited check # 756 from B.B.'s Bank of America account in the amount of $139,000 into account # xxxxx251-5 at Chevy Chase Bank, an account owned by defendant FALL.

(13) On or about December 15, 2003, defendant FALL transferred $130,000 from Chevy Chase Bank account # xxxxx251-5 to purchase a certificate of deposit account number 027-xxxxxx84-4 at Chevy Chase Bank.

(14) On or about January 13, 2004, defendant FALL withdrew $139,000 from Chevy Chase Bank account # xxxxx251-5 and obtained a cashier's check for $139,000 made payable to B.B..

(15) On or about January 13, 2004, defendant KARERI transmitted by facsimile a letter to Riggs Bank Executive Vice President David Caruso in which KARERI falsely stated that the $140,000 check from Mr. Nguema was a loan to B.B. for B.B.'s purchase of Section 8 housing.

(16) On or about January 13, 2004, defendant FALL transmitted by facsimile a letter to Riggs Bank Executive Vice President David Caruso in which FALL falsely stated that the $140,000 check from Mr. Nguema was a loan to B.B. for B.B.'s purchase of Section 8 housing.

**(Conspiracy, Aiding and Abetting, Causing an Act to be Done,
in violation of 18 United States Code, Sections 371 and 2)**

### BANK FRAUD

24. Riggs Bank was a financial institution whose deposits were insured by the Federal Deposit Insurance Corporation.

25. From between in or about January, 2000, until in or about March, 2004, in a continuing course of conduct, in the District of Columbia and elsewhere, defendants SIMON P. KARERI and NDEYE NENE FALL KARERI, for the purpose of executing and attempting to

execute the aforementioned scheme and artifice, did defraud a financial institution, that is, Riggs Bank, and obtain money owned by and under the custody and control of Riggs Bank, by means of false and fraudulent pretenses, representations and promises, that is, defendants SIMON P. KARERI and NDEYE NENE FALL KARERI wilfully concealed the material fact from Riggs Bank that KARERI was engaging in prohibited personal business transactions with Riggs Bank customers.

26. On or about the dates set forth below, corresponding to the enumerated counts, in the District of Columbia and elsewhere, defendants SIMON P. KARERI and NDEYE NENE FALL KARERI, for the purpose of executing and attempting to execute the aforementioned scheme and artifice, committed the following acts:

| DATE | ACT IN EXECUTION OF THE SCHEME AND ARTIFICE |
| --- | --- |
| 9/6/00 | Defendant KARERI solicited and received a payment of $49,000 from H.S. |
| 7/5/01 | Defendant KARERI caused the wire transfer of $700,000 from Riggs account # xxxx4642 held by the government of EG to defendant FALL's Jadini account |
| 7/5/01 | Defendant KARERI caused the wire transfer of $329,926 from Riggs account # xxxx4642 held by the government of EG to FALL's Jadini account |
| 3/20/02 | Defendant KARERI caused the wire transfer of $66,751.68 from Riggs account # xxxx4642 held by the government of EG to KARERI's Jadini account |
| 11/28/03 | Defendants KARERI and FALL delivered to B.B. Riggs Bank check # 301 drawn from Teodoro Nguema Obiang's Riggs Bank account # xxxx3-450 in the amount of $140,000 |

**(Bank Fraud, Causing an Act to be Done, Aiding and Abetting,
in violation of Title 18, United States Code, Sections 1344 and 2)**

**WIRE FRAUD AND DEPRIVATION OF HONEST SERVICES**

27. On or about the dates set forth below, defendant SIMON P. KARERI and NDEYE NENE FALL KARERI, in the District of Columbia and elsewhere, for the purpose of executing the above-described scheme and artifice to defraud and deprive, knowingly transmitted and

caused to be transmitted by means of wire communication in interstate commerce, the following writings, signals and sounds:

| DATE | WIRE COMMUNICATION | FROM | TO |
|---|---|---|---|
| 7/5/01 | Wire transfer of $329,926 | EG government Riggs Bank account # xxxxx4642, Washington, D.C. | Defendant FALL's SunTrust Jadini account # xxxxx5260, Virginia |
| 7/5/01 | Wire transfer of $700,000 | EG government Riggs Bank account # xxxxx4642, Washington, D.C. | Defendant FALL's SunTrust Jadini account # xxxxx5279, Virginia |
| 3/20/02 | Wire transfer of $66,751.68 | EG government Riggs Bank account # xxxxx4642, Washington, D.C. | Defendant FALL's SunTrust Jadini account # xxxxx5279, Virginia |
| 1/13/04 | Facsimile letter | Defendant KARERI, Silver Spring, Maryland | David Caruso, Riggs Bank, Washington, D.C. |
| 1/13/04 | Facsimile letter | Defendant FALL, Silver Spring, Maryland | David Caruso, Riggs Bank, Washington, D.C. |
| 1/13/04 | Facsimile letter | B.B., Maryland | David Caruso, Riggs Bank, Washington, D.C. |

**(Wire Fraud, Deprivation of Honest Services, Causing an Act to be Done, Aiding and Abetting, in violation of Title 18, United States Code, Sections 1343, 1346 and 2)**

## MONEY LAUNDERING

28. On or about the dates set forth below, in the District of Columbia, defendants SIMON P. KARERI and NDEYE NENE FALL KARERI, did knowingly engage and attempt to engage in the monetary transactions set forth below by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is bank fraud:

| DATE | TRANSACTION | AMOUNT |
|---|---|---|
| 7/5/01 | Defendant KARERI's deposit of funds into SunTrust Jadini account # xxxx5260 | $329,926 |
| 7/5/01 | Defendant KARERI's deposit of funds into SunTrust Jadini account # xxxx5279 | $700,000 |

| | | |
|---|---|---|
| 3/20/02 | Defendant KARERI's deposit of funds into SunTrust Jadini account # xxxxx5279 | $66,751.68 |
| 12/8/03 | Defendant FALL deposit of check # 758 to Chevy Chase Bank account # xxxx4251-5 | $139,000 |
| 12/15/03 | Defendant FALL transfer of money from Chevy Chase Bank account # xxxxx4251-5 to Chevy Chase certificate of deposit # xxxxx084-4 | $130,000 |
| 1/13/04 | Defendant FALL withdrawal from Chevy Chase Bank account # xxxx251-5 | $139,000 |

**(Money Laundering, Aiding and Abetting, Causing an Act to be Done, in violation of 18 United States Code, Sections 1957 and 2)**

III. CONCLUSION

29. Based on the above information, I respectfully submit that there is probable cause to believe that SIMON P. KARERI and NDEYE NENE FALL KARERI committed and conspired to commit the offenses listed in this Affidavit and that probable cause exists for their arrest.

30. I therefore respectfully request that an arrest warrants be issued for SIMON P. KARERI and NDEYE NENE FALL KARERI.

31. I hereby swear that the above information and facts are true and correct to the best of my knowledge.

_____
Mark Richard Stanley
Special Agent
Federal Bureau of Investigation
Falls Church, Virginia

Subscribed and sworn to before me this \_\_\_\_ day of May 2005.

_____
U.S. Magistrate Judge